UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| UNITED STATES OF AMERICA ) | |
| ) | |
| v. ) | Crim. No. 08-119 (RBW) |
| ) | |
| JEROME KINARD, ) | |
| ) | |
| Defendant. ) | |

**DEFENDANT'S OBJECTION TO GOVERNMENT'S
NOTICE OF DEFENDANT'S SECTION 924(E)(1) STATUS**

Defendant Jerome Kinard, through counsel, respectfully submits this Objection to the Government's Notice of Defendant's Section 924(e)(1) Status. In addition, by this pleading, the defense respectfully requests a ruling on Mr. Kinard's section 924(e)(1) status prior to the trial in this matter, which is scheduled to begin on June 10, 2008.

**BACKGROUND**

In its Notice, the government argues that Mr. Kinard is subject to a fifteen year mandatory minimum penalty under the "Armed Career Criminal Act" ("ACCA"), 18 U.S.C. § 924(e)(1). The government's Notice asserts that Mr. Kinard is subject to ACCA because he has three prior felony convictions that are either "serious drug offenses" or "violent felonies:" (1) a 1990 conviction in Superior Court for attempted distribution of cocaine; (2) a 1997 second degree assault conviction in Maryland; and (3) a 2006 federal conviction for the distribution of cocaine base. As discussed below, the defense objects to the use of the first two convictions under ACCA, as neither conviction meets ACCA's requirements for predicate convictions under 18 U.S.C. § 924(e)(2).

A.    The Second Degree Assault Conviction.

The alleged "violent felony" is Mr. Kinard's 1997 second degree assault conviction from Maryland, for which he received a sentence of four years, with all but six months suspended. Under Md. Code § 3-203(a) (formerly codified as Md. Code Art. 27, § 12A), titled Assault in the Second Degree, a "person may not commit an assault." Under Md. Code § 3-203(b), a person "who violates subsection (a) of this section is guilty of the misdemeanor of assault in the second degree" and is subject to, *inter alia*, up to ten years in prison. Under Md. Code § 3-201(a), "'Assault' means the crimes of assault, battery, and assault and battery, which retain their judicially determined meanings." Md. Code § 3-203(b).

The materials submitted by the government demonstrate that Mr. Kinard was convicted by a jury of second degree assault. The government's pleading does not include the jury instructions relied upon by the Maryland jury, and the government *ipso facto* fails to carry its burden of demonstrating that Mr. Kinard's second degree assault conviction is a "violent felony" within ACCA's scope. Indeed, as discussed further below, the current jury instructions for a Maryland second degree assault conviction permit a conviction upon an "intent to frighten," M.P.J.I.-Cr. 4:01 (ex. 1), which does not necessarily involve the "use of force," as required under ACCA.

B.    The Attempted Distribution of Cocaine Conviction.

The government's Notice further asserts that Mr. Kinard's 1990 conviction in Superior Court for attempted distribution of cocaine is a qualifying offense under ACCA's provision for "serious drug offenses." In support of that assertion, the government has submitted the one-page

judgment from the 1990 case. The judgment reflects that Mr. Kinard was sentenced to 18 months of supervised probation in that case.

## DISCUSSION

**I.     The Government Cannot Demonstrate That Mr. Kinard's Second Degree Assault Conviction Is A Violent Felony Under ACCA.**

The government's pleading fails to satisfy its burden of demonstrating that Mr. Kinard's 1997 conviction for second-degree assault qualifies as a "violent felony" under ACCA. Under 18 U.S.C. § 924(e)(2)(B)(i), the test for whether a prior conviction is a "violent felony" is whether the prior conviction "has as an element the use, attempted use, or threatened use of physical force against the person of another." *Id.*  In *United States v. Begay*, – U.S. –, 128 S. Ct. 1581, 1584 (2008), the Supreme Court instructed that "[i]n determining whether [a] crime is a violent felony, we examine it in terms of how the law defines the offense and not in terms of how an individual offender might have committed it in a particular occasion." With respect to a prior conviction that involved a jury trial, an offense qualifies as a "violent felony" under ACCA only if "the charging paper and jury instructions actually required the jury to find all the elements of [a violent felony] in order to convict the defendant." *Taylor v. United States*, 495 U.S. 575, 602 (1990).[1] Under the law, "[i]f any set of facts would support a conviction without proof of [the use of force], then [the use of force] most decidedly is not an element – implicit or explicit of the crime." *United States v. Vargas-Duran*, 356 F.3d 598, 602 (5th Cir. 2004) (*en banc*); *see also*

---

[1] In Shepard v. United States, 544 U.S. 13 (2005), a plurality held that in determining whether a prior conviction constituted a predicate "violent felony" for enhancement purposes under the Armed Career Criminal Act ("ACCA"), a sentencing judge is ***not*** permitted to consider police reports or criminal complaint applications in determining whether a guilty plea to a burglary charge supported a conviction for generic burglary, which would qualify it as a violent felony under ACCA. Id. at 19-26.

*United States v. Houston*, 364 F.3d 243, 246 (5th Cir. 2004) ("[i]f an indictment is silent as to the offender's actual conduct, [the court] must proceed under the assumption that his conduct constituted the lease culpable act satisfying the count of conviction"); *see also id.* at 246-48 (applying analysis to conclude that statutory rape under Texas law did not qualify as a crime of violence under U.S.S.G. § 4B1.2(a)); *accord United States v. Insaulgarat*, 378 F.3d 456, 467-71 (5th Cir. 2004) (applying *Houston*'s "least culpable act" rule to hold that aggravated stalking under Florida law was not a crime of violence under U.S.S.G. §§ 4B1.1 and 4B1.2).

Under the Maryland statute for second degree assault, the only required offense conduct is that the defendant "commit an assault." Under the "judicially retained meaning" of an "assault," the offense may–but need not–have involved "the use, attempted use, or threatened use of physical force against the person of another." 18 U.S.C. § 924(e)(2)(B)(i). Under Maryland law, for example, the current jury instruction for second degree assault permits a conviction for "intentionally frightening another person with the threat of immediate offensive physical contact."[2] Ex. 1. That mere "offensive physical contact" is insufficient to meet ACCA's test for the "use of force" is clear. In *Flores v. Ashcroft*, 350 F.3d 666, 672 (7th Cir. 2003), the Seventh Circuit held that a conviction under an offensive touching battery statute–which did require physical contact–did not involve the use of "force")*; accord United States v. Belless*, 338 F.3d 1063, 1067 (9th Cir. 2003) (holding that state battery statute that punished "unlawfully touch[ing] another in a rude, insolent or angry manner did not include an element of "use or

---

[2]    The government's Notice did not attach the jury instructions from Mr. Kinard's Maryland trial. Because those instructions are essential to the determination of whether that misdemeanor conviction is a "violent felony," the government's position that Mr. Kinard qualifies under section 924(e) may be rejected on the basis of that failure alone.

attempted use of physical force" because 18 U.S.C. § 921(a)(33)(A)(ii) requires violent force against the body of another individual, not merely rude touching); *United States v. Rodriguez-Guzman*, 56 F.3d 18, 20 n.8 (5th Cir. 1995) ("'force' . . . is synonymous with destructive violence or force").

In this case, because the Maryland statute covering second degree assault criminalizes any "assault," there are numerous scenarios where a defendant could be convicted of second degree assault without having committed an offense involving "the use, attempted use, or threatened use of physical force against the person of another." 18 U.S.C. § 924(e)(2)(B)(i). A "rude touching" such as in *Belless*, is one such scenario. Mr. Kinard is accordingly not subject to ACCA's enhanced sentencing provisions.

The foregoing analysis finds further support in the recent Supreme Court decision *Begay v. United States*, 128 S. Ct. 1581. In *Begay*, the Supreme Court held that the New Mexico felony offense of driving under the influence of alcohol (DUI) is not a "violent felony" within the meaning of 18 U.S.C. § 924(e)(2)(B)(ii). While the Court acknowledged that DUI "'presents a serious potential risk of physical injury to another,'" the Court nevertheless held that Congress did not intend for crimes such as DUI to fall within ACCA's scope, as DUI was insufficiently similar to the offenses listed as examples in the statute, *i.e.*, burglary, arson, extortion, and crimes involving the use of explosives. The Court thus held that "New Mexico's crime of 'driving under the influence' falls outside the scope of the Armed Career Criminal Act's clause (ii) "violent felony" definition." *Id.* at 1588.

In general terms, *Begay* stands for the proposition that the term "violent felony" must be read with a rule of reason. Simple assault is a misdemeanor in the vast majority of jurisdictions

5

(including the District of Columbia). *See generally* Model Penal Code ("Simple assault is a misdemeanor unless committed in a fight or scuffle entered into by mutual consent, in which case it is a petty misdemeanor"). Indeed, Md. Code § 3-203(b) itself refers to second degree assault as a "misdemeanor." S*ee id.* (a person "who violates subsection (a) of this section is guilty of the ***misdemeanor*** of assault in the second degree")). Moreover, simple assault is not an offense of comparable magnitude to arson, burglary, or crimes involving the use of explosives. Accordingly, classifying simple assault as a "violent felony" is not only inconsistent with ACCA's statutory language requiring an element of force, but also with *Begay* and the earlier cases interpreting ACCA's provisions.

**II.   Following the Supreme Court 's Opinion In *Begay*, Mr. Kinard's "Attempted" Distribution Offense Is No Longer Considered A "Serious Drug Offense."**

In the wake of *Begay*, Mr. Kinard's attempted distribution of cocaine conviction from 1990 should no longer qualify as a "serious drug felony" under ACCA. ACCA defines a "serious drug offense" as "an offense under State law, involving manufacturing, distributing, or possessing with intent to manufacture or distribute, a controlled substance . . . for which a maximum term of imprisonment of ten years or more is prescribed by law." 18 U.S.C. § 924(e)(2)(A)(ii). In *United States v. Williams*, 488 F.3d 1004, 1008-09 (D.C. Cir. 2008), the D.C. Circuit considered, under a plain error standard, whether a conviction for attempted distribution of cocaine qualified as a "serious drug felony." Based on the Circuit's previous decision in *United States v. Alexander*, 331 F.3d 116, 130 (D.C. Cir. 2003), the *Williams* court held that a defendant's prior conviction for attempted possession with intent to distribute a controlled substance qualified as a "serious drug offense" under ACCA. It should be noted,

however, that *Williams* and *Alexander* were expressly premised on an "expansive" view of ACCA's statutory language concerning what offenses qualify as "serious drug offenses." *See, e.g., Williams*, 488 F.3d at 1009 ("[b]ecause we agreed . . . that the term 'involving' is expansive, we concluded that the defendant's prior attempt conviction involved possession with intent to distribute a controlled substance") (citation and internal quotation marks omitted).

Several months after the court decided *Williams*, the Supreme Court decided *Begay*. As discussed above, *Begay* represents a significant constriction of the numbers and types of crimes that will qualify for enhancement under ACCA. *Begay* calls into serious question whether the D.C. Circuit would again reach the results of *Williams* and *Alexander*, which were expressly premised on an "expansive" view of ACCA's statutory language. Crimes that merely involve an attempt at drug-related activity–as opposed to the actual manufacture or distribution of drugs–likely no longer qualify under ACCA's definition of a serious drug offense. Accordingly, following *Begay*, this Court should hold that Mr. Kinard's attempted distribution of cocaine conviction does not qualify as a serious drug offense under ACCA.

## CONCLUSION

For the foregoing reasons, Mr. Kinard respectfully submits this Objection to the Government's Notice of Defendant's Section 924(e)(1) Status. Mr. Kinard respectfully requests a ruling on the issues raised by the government's Notice prior to the trial.

                Respectfully submitted,

                A.J. Kramer
                Federal Public Defender

                _____/s/_____
                Jonathan S. Jeffress
                Assistant Federal Public Defender
                625 Indiana Ave., N.W., Suite 550
                Washington, D.C. 20004
                (202) 208-7500, ex. 134
                (202) 208-7515 (fax)

# EXHIBIT 1

**MPJI-Cr 4:01 SECOND DEGREE ASSAULT**

The defendant is charged with the crime of assault.

1. A

**INTENT TO FRIGHTEN**

Assault is intentionally frightening another person with the threat of immediate [offensive physical contact] [physical harm]. In order to convict the defendant of assault, the State must prove:

(1) that the defendant committed an act with the intent to place (victim) in fear of immediate [offensive physical contact] [physical harm];

(2) that the defendant had the apparent ability, at that time, to bring about [offensive physical contact] [physical harm]; and

(3) that (victim) reasonably feared immediate [offensive physical contact] [physical harm]; [and]

[(4) that the defendant's actions were not legally justified.]

B

**ATTEMPTED BATTERY**

Assault is an attempt to cause [offensive physical contact] [physical harm]. In order to convict the defendant of assault, the State must prove:

(1) that the defendant actually tried to cause immediate [offensive physical contact with] [physical harm to] (victim);

(2) that the defendant intended to bring about [offensive physical contact] [physical harm]; and

(3) that the defendant's actions were not consented to by (victim) [or not legally justified]. (note on use)

C

**BATTERY**

Assault is causing offensive physical contact to another person. In order to convict the defendant of assault, the State must prove:

(1) that the defendant caused [offensive physical contact with] [physical harm to] (victim);

(2) that the contact was the result of an intentional or reckless act of the defendant and was not accidental; and

(3) that the contact was not consented to by (victim) [or not legally justified].

Notes on Use

Use this instruction if the defendant is charged with second degree assault, under **Md. Ann. Code art. 27, § 12A (1996** Repl. Vol.). Use version "A" when the only theory of assault is an intent to frighten type of assault. Use (4) only if the evidence generates justification, *e.g.*, self-defense, and give the instruction for that justification. Use version "B" when the only theory of assault is an attempted battery type of assault. Out of an abundance of caution, use (3) unless it is clear that there is neither justification nor consent. Use version "C" when the only theory of assault is a battery. Out of an abundance of caution, use (3) unless it is clear that there is neither justification nor consent. Although version "B" and version "C" may both be applicable, it is unlikely that both version "A" and version "B" are applicable or that both version "A" and version "C" are applicable.

Cross Reference

MPJI-Cr 4:01.1, MPJI-Cr 5:07.

Comment

In 1996, the Maryland General Assembly enacted a statutory assault scheme, **Md. Ann. Code art. 27, § 12-12A-7 (1998 & Supp. 2000)**, which "abrogated the common law offenses of assault and battery." ***Robinson v. State*, 353 Md. 683, 696, 728 A.2d 698, 704 (1999)**. Nonetheless, statutory second degree assault includes common law "offenses of assault, battery, and assault and battery, which terms retain their judicially determined meanings." **Md. Ann. Code art. 27, § 12 (Supp. 2000)**. The meaning of these terms has been extensively developed at common law and case law. *See e.g.,* ***Lamb v. State*, 93 Md. App. 422, 613 A.2d 402 (1992)**. The Committee to Revise **Article 27** did not intend to "freeze" the meanings of these terms, but rather expects that they will continue to be clarified when appropriate in future case law.

The intent to frighten type of assault consists of placing another in reasonable apprehension of an immediate battery with the specific intent to cause such apprehension. ***Wieland v. State*, 101 Md. App. 1, 38, 643 A.2d 446, 464 (1994)**; ***Harrod v. State*, 65 Md. App. 128, 133, 499 A.2d 959, 961 (1985)**; ***Taylor v. State*, 52 Md. App. 500, 504, 450 A.2d 1312, 1315 (1982)**, *cert. denied*, 295 Md. 691 (1983). The victim must be aware of the impending battery. ***Harrod*, 65 Md. App. at 138, 499 A.2d at 964**. There must be an apparent present ability to commit the battery. *See* ***Dixon v. State*, 302 Md. 447, 456-64, 488 A.2d 962, 966-70 (1985)**; Clark & Marshall, *A Treatise on the Law of Crimes* 728 (7th ed. 1967); Rollin M. Perkins & Ronald N. Boyce, *Criminal Law* 166-67 (3d ed. 1982); Richard P. Gilbert & Charles E. Moylan, Jr., *Maryland Criminal Law: Practice and Procedure* 47 (1983).

The attempted battery type of assault requires a substantial step toward the completion of a battery, with the apparent present ability to do so. Unlike an intent to frighten type of assault, there is no need for the victim to be aware of the impending battery in an attempted battery type of assault. ***Harrod*, 65 Md. App. at 131-35, 499 A.2d at 960-62**. *See* ***Young v. State*, 303 Md. 298, 306, 311, 492 A.2d 352, 356, 359 (1985)**.

Common law battery is the unjustified, offensive, and nonconsensual application of force by direct or indirect physical contact to the person of another or an extension of that person, *e.g.*, the clothing of that person. *See generally Perkins, supra* at 151-58; *see* ***Epps v. State*, 333 Md. 121, 127, 634 A.2d 20, 23 (1993)**; ***Snowden v. State*, 321 Md. 612, 617, 583 A.2d 1056 (1991)**; ***Taylor*, 52 Md. App. at 504, 450 A.2d at 1315**; ***Woods v. State*, 14 Md. App. 627, 629-33, 288 A.2d 215, 216-18 (1972)**. A criminal battery may be intentional or unintentional. ***Elias v. State*, 339 Md. 169, 182, 661 A.2d 702, 708 (1995)**. To be convicted of committing an intentional battery, there must be sufficient proof that the defendant intended to cause harmful or offensive

contact against a person without that person's consent and without legal justification. *Id.* There is no requirement that the defendant intend to cause a specific injury or that the victim suffer any physical injury. The mere placing of one's hands upon the body of another without consent is sufficient. Gilbert & Moylan, § 3.1.

An unintentional battery can arise from contact that is the result of a person's criminal negligence that legally causes injury to another. ***Elias*, 339 Md. at 184, 661 A.2d at 708**. It is sufficient that the defendant acted in a reckless or grossly negligent manner. ***Id.* at 184, 661 A.2d at 709** (the requisite criminal negligence necessary for conviction of an unintentional battery may be equated to the culpability required for a conviction of involuntary manslaughter, but without the death); ***Duckworth v. State*, 323 Md. 532, 540, 594 A.2d 109, 112-13 (1991)**; LaFave, *supra* at 687. To determine whether a defendant's action constitutes gross criminal negligence or recklessness, the "test is whether the misconduct, viewed objectively, was so reckless as to constitute a gross departure from the standard of conduct that a law-abiding person would observe." ***State v. Albrecht*, 336 Md. 475, 501, 649 A.2d 336, 348 (1994)**.